**Roger D. HAWKINS and Dubose H. Moye, Jr., Plaintiffs,**

v.

**Chief ELLIOTT et al., Defendants.**

**Civ. A. No. 74–935.**

United States District Court,
D. South Carolina,
Columbia Division.

Sept. 27, 1974.

Roger D. Hawkins, pro se.

Dubose H. Moye, Jr., pro se.

Emmet H. Clair, Asst. Atty. Gen. for the State of S. C., Columbia, S. C., for defendants.

## ORDER

HEMPHILL, District Judge.

Plaintiffs, presently in residence in the South Carolina Department of Corrections, having received from this court (July 16, 1974) permission to proceed *in forma pauperis*,[1] brings suit against defendants for cruel and unusual punishment. They claim, individually and collectively, that defendants, all Corrections Department officials, subjected them to tear gas exposure, placed them in a cell without clothes or bedding, and struck Moye while he was handcuffed. They seek damages and transfer from the maximum security enclave.

Plaintiffs have been in frequent contact with the law.[2] Hawkins has a number of convictions from various counties in the state, having been convicted of auto theft, breaking and entering, grand larceny, assault and battery of a high and aggravated nature, malicious mischief to personal and real property, robbery and larceny, and assault and battery with in-

tent to kill, and is now serving an aggregate sentence of thirty-two (32) years and six (6) months, commencing May 20, 1968. (The most recent sentence of twenty (20) years was imposed April 29, 1973 for an offense committed while in the Department of Corrections. On May 9, 1973, Moye was given a sentence not to exceed six (6) years for housebreaking and larceny, has escaped once and presently has charges pending of possession of contraband, assault and battery with intent to kill, possession of weapons, and escape.

This case arose out of a series of incidents which the plaintiffs originated. On or about May 9, 1974, both plaintiffs sent abusive and vulgar letters[3] to defendant Elliott. According to his answer, he sent Bost and another officer to Hawkins' cell and they brought him to Elliott's office, where Hawkins[4] became unruly, but admitted he wrote the note. He was placed in punitive segregation where he began creating a disturbance, for which disciplinary action was taken. The chronology of Moye's treatment is almost identical.

Defendants have filed an answer setting up four defenses, and an affidavit signed by each defendant accompanies the answer. Plaintiffs were given ten (10) days in which to file a reply, but none was filed. Defendants contend that the complaint fails to state a claim against them upon which relief can be granted, that the alleged federal questions are patently frivolous and insubstantial, and that no constitutional rights of plaintiffs have been violated, making § 1983 inapplicable in this case. The fourth defense denies each allegation of the complaint not admitted, qualified, or explained, and then proceeds to outline the sequence of events which cul-

1. 28 U.S.C. § 1915.

2. The answer, not denied by plaintiffs, furnishes this information.

3. The notes or letters were exhibits to defendants' answer.

4. Hawkins filed two former actions. In Civil Action No. 72–119, District of South Carolina, he complained of various prison disciplines, requested voluntary dismissal when the eye of the court focused on the merits of his claim. In Civil Action No. 72–454 he complained of interference with his incoming packages, and loss of his watch; this and other cases were consolidated by Chief Judge Martin, Jr., of the District of South Carolina, and later dismissed as not being meritorious.

minated in the placing of both plaintiffs in punitive isolation because of their notorious breaches of disciplinary rules at the institution where they were incarcerated on May 9, 1974, the date of the alleged delicts.

From the affidavits of Thelbert Elliott, Willie E. Doctor, and William A. Bost,[5] attached to the answer, it is apparent that plaintiffs instigated the confrontations that resulted in their punitive isolation in the Maximum Detention Retraining Center at the Central Correctional Institution of the South Carolina Department of Corrections. After sending offensive and filthy letters to the correctional officers,[6] the two plaintiffs were taken separately before officer Elliott for the purpose of interviews,[7] and after it became apparent that the plaintiffs were unreasonable, they each were placed in isolation. Upon arrival in the isolation cells, plaintiffs then endeavored to incite other inmates confined in the maximum security wing to the end of creating a major disturbance at that location. When both plaintiffs were detected attempting to destroy prison property,[8] officer Elliott used tear gas to suppress the violent behavior of plaintiffs. Thereafter plaintiffs were permitted to take showers, and were seen by a medical technician who pronounced both men in good condition.

As earlier noted, in the face of the detailed affidavits filed by the defendants, plaintiffs have not offered any reply to contravene defendants' accounts of the incidents of May 9, 1974. It appears, therefore, that defendants' first defense set up in the answer may be treated as a motion for summary judgment under Rule 12(b)(6),[9] Federal Rules of Civil Procedure, and disposed of as provided in Rule 56.[10]

Initially, the court concludes from the pleadings and affidavits before it that plaintiffs are not entitled to any of the relief sought in this action. Additionally, the statute that authorizes the institution of a civil action *in forma pauperis* with leave of court also specifies that the court may monitor the action to the end of avoiding or minimizing abusive prosecutions of civil suits *in*

5. On the date of the alleged § 1983 violations, Elliott was the senior Correctional Officer at M.D.R.C., and Doctor and Bost were assigned to that maximum security wing.

6. Copies of these letters are annexed to the affidavits filed with the answer. The language employed by plaintiffs is so coarse or vulgar that it would most probably lead to punitive sanctions in any prison in the free world. Both plaintiffs based their abusive epistles on denials of their requests to be placed in some sort of isolation. They now complain of the treatment they received while in isolation.

7. In his affidavit of August 5, 1974, Elliott used the language that he "attempted to counsel" with each plaintiff.

8. Or, in the case of Moye, possibly attempting to obtain a piece of metal that could be fashioned into a weapon.

9. Fed.R.Civ.P. 12(b)(6) provides: Defenses and Objections—When and How Presented—By Pleading or Motion—Motion for Judgment on the Pleadings. * * (b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * * If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

10. " * * * It will bear repetition that the primary purpose of the summary judgment procedure is to pierce the allegations of the pleadings, show that there is no genuine issue of material fact although an issue may be raised by the pleadings, and that the movant is entitled to judgment as a matter of law. To attain this end Rule 56 provides several methods for presenting materials extraneous to the pleadings. The use of affidavits is one such method." 6 Moore's Federal Practice § 56.11[3], p. 2161.
" * * * [A]ffidavits may be used to overcome pleading allegations." *Ibid.*, p. 2164.

*forma pauperis* by indigent litigants who seek to exploit or abuse the generous purposes of the enabling statute, Title 28, United States Code, Section 1915.[11] The court has the power to invoke this shield before a civil action is instituted by an indigent,[12] or after a request for dismissal has been made.[13] For obvious reasons, application of the rule that empowers the court to excise frivolous or malicious cases must be made on a case-by-case basis, based upon circumstances presented to the court by the unique facts of each case.[14]

In Jones v. Bales, supra, 58 F.R.D. at pages 463–464, Chief Judge Smith, of the Northern District of Georgia, discussed § 1915(d) in the context of a suit filed under 42 U.S.C. § 1985 by an indigent convicted prisoner. He read 28 U.S.C. § 1915(d) "as a very broad grant of discretion to the courts regarding management of in forma pauperis actions," and as "a grant of power to dismiss in situations where dismissal under . . . Rule . . . 12 might be improper." [Citations omitted.] He continued by explaining why prisoners' cases are sometimes singularly exposed to the application of § 1915(d):

There are compelling reasons for allowing courts broader dismissal powers in forma pauperis suits—especially damage suits brought by convicted prisoners—than in other cases. Persons proceeding in forma pauperis are immune from imposition of costs if they are unsuccessful; and because of their poverty, they are practically

immune from later tort actions for 'malicious prosecution' or abuse of process. Thus indigents, unlike other litigants, approach the courts in a context where they have nothing to lose and everything to gain. The temptation to file complaints that contain facts which cannot be proved is obviously stronger in such a situation. For convicted prisoners with much idle time and free paper, ink, law books, and mailing privileges the temptation is especially strong. As Justice Rehnquist has noted, 'Though [an inmate] may be denied legal relief, he will nonetheless have obtained a short sabbatical in the nearest federal courthouse.' Cruz v. Beto, 405 U.S. 319, 327, 92 S.Ct. 1079, 1084, 31 L.Ed.2d 263 (1972) (dissenting).

The Federal Rules of Civil Procedure are inadequate to protect the courts and defendants—who it should be remembered pay for their defense —from frivolous litigation from indigent prisoners. The Rules are liberal; they are designed so that most cases will actually go to trial if the parties so desire. Under current standards, Rule 12 motions to dismiss are rarely properly granted. [Citations omitted.] The liberal approach of the Rules is probably desirable, but the rules contemplate litigants who are limited by the realities of time and expense. They also contemplate litigants with a basic respect for accuracy . . .

After noting the proclivities of some prisoners to take liberties with truth by

---

11. Subsection (d) of 28 U.S.C. § 1915 reads, as material here:

"The court . . . may dismiss the case . . . if satisfied that the action is frivolous or malicious."

12. Caviness v. Somers, 235 F.2d 455, 456 (4th Cir. 1956): "It is quite clear that Congress, while intending to extend to poor and meritorious suitors the privilege of having their wrongs redressed without the ordinary burdens of litigation, at the same time intended to safeguard the members of the public against abuse of the privilege by evil-minded persons who might avail themselves

of the shield of immunity from costs for the purpose of harassing those with whom they were not in accord, by subjecting them to vexatious and frivolous legal proceedings."

13. Fletcher v. Young, 222 F.2d 222 (4th Cir. 1955); Conway v. Fugge, 439 F.2d 1397 (9th Cir. 1971); Allison v. Wilson, 434 F.2d 646, 648 (9th Cir. 1970).

14. Willard v. United States, 299 F.Supp. 1175, 1177 (N.D.Miss.1969), aff'd, 422 F.2d 810 (5th Cir. 1970), cert. den., 398 U.S. 913, 90 S.Ct. 1714, 26 L.Ed.2d 76 (1970); Jones v. Bales, 58 F.R.D. 453 (N.D.Ga.1972), aff'd 480 F.2d 805 (5th Cir. 1973).

willingly misrepresenting facts in their pleadings so as to avoid a dismissal under Rules 12 and 56, Chief Judge Smith continued:

> It is plain to this Court that courts need an extra measure of authority when faced with actions proceeding in forma pauperis—particularly where the action is brought by a prisoner seeking damages. And it is this court's conclusion that Congress has granted that extra authority by enacting 28 U.S.C. § 1915(d) . . .

Judge Smith expressed the belief that "frivolous" in subsection (d) "refers to an action in which the plaintiff's realistic chances of ultimate success are slight." After sifting the facts and claims thoroughly, he was completely satisfied that the claim of the plaintiff before him lacked merit, and dismissed it.[15]

It affirmatively appears to this court that plaintiffs' claims are frivolous or malicious and should be dismissed. Plaintiffs have not replied to defendants' detailed affidavits. This silence, coupled with the obvious fact that plaintiffs are the architects of their own misfortune, adds strength to the conclusions of the court. The claims fall within the ambit of 28 U.S.C. § 1915(d).

Motion for summary judgment granted. Complaint dismissed.

And it is so ordered.

15. Judge Smith did not advert to the question of jurisdiction, *per se*, in his excellent reflection of the reasoning he followed in applying § 1915(d) to a frivolous civil action. It was unnecessary for him to do so. However, the reasoning he followed is appropriate to emphasize that 42 U.S.C. § 1981 et seq. are applicable to *only* torts of a constitutional magnitude. A frivolous action filed by an indigent prisoner is dismissable also because the prisoner fails to state a claim against a state official cognizable under the Civil Rights Act. Our Court of Appeals has noted recently:

> 42 U.S.C. § 1983 is a right of action for the deprivation of federal constitutional rights. It is not a federal remedy for ordinary state tort claims, for it can vindicate only federal constitutional rights determined under federal substantive law . . . Within those confines, however, it is not inappropriate to borrow from state law a developed body of rules governing actionable wrongs and a procedural bar to the assertion of a federal claim of relative triviality. Tucker v. Duncan et al., 499 F.2d 963 (1974).

Penal officials have a duty to segregate prisoners who incite disturbances. Long v. Harris, 332 F.Supp. 262, 270 (D.Kan.1971), aff'd, 473 F.2d 1387 (10th Cir. 1973). A prisoner has no right to verbally abuse guards, nor to engage in other forms of protest which impose a clear and present danger of disorder and violence. Collins v. Schoonfield, 363 F.Supp. 1152 (D.Md.1973). The prompt suppression of such a violent outburst within limits imposed on the amount of force employed could never constitute an actionable tort of constitutional dimension.