**Mark E. SAVAGE, Plaintiff,**

v.

**Superintendent Joseph SNOW, et al., Defendants.**

**No. 82 CIV. 0860 (CBM).**

United States District Court, S.D. New York.

June 1, 1983.

---

Mark E. Savage, plaintiff pro se.

Robert Abrams, Atty. Gen., State of N.Y. by Joyce Andren, Asst. Atty. Gen., New York City, for defendants.

## OPINION

MOTLEY, Chief Judge.

This is an action under 42 U.S.C. § 1983 seeking damages and equitable relief for alleged violations of constitutional rights. Pro se plaintiff Mark E. Savage was incarcerated at Mid-Orange Correctional Facility at the time this action was commenced.[1] The defendants are prison officials at Mid-Orange Correctional Facility.[2] The court has jurisdiction of this action pursuant to 28 U.S.C. § 1343(a)(3).

---

1. Subsequently, plaintiff was transferred to Downstate Correctional Facility and again to Elmira Correctional Facility. The Pro Se Clerk of this court has ascertained that plaintiff was released from prison on June 30, 1982 and is no longer incarcerated.

2. The defendants are:
   a) Superintendent Snow;
   b) Deputy Superintendent J. Perrin (held plaintiff's Superintendent's Proceeding);
   c) Captain Childs (ordered plaintiff placed in Special Housing Unit on September 16, 1981);
   d) Lieutenant Edwards (held plaintiff's Adjustment Committee hearing on September 10, 1981);
   e) Lieutenant Thompson (held plaintiff's Adjustment Committee hearing on September 14, 1981);
   f) Sergeant Puiglulee (escorted plaintiff to the Special Housing Unit on September 16, 1981);
   g) Sergeant Wilhelm (issued a "ticket" to plaintiff for refusing to work on September 9, 1981);
   h) Corrections Officer Cook (issued a "ticket" for abusive language);
   i) Corrections Officer Trainor (issued a "ticket" to plaintiff on August 30, 1981 for refusing to work);
   j) Corrections Officer Haynal (issued a "ticket" that duplicated the "ticket" issued by Sergeant Wilhelm).

The case is now before the court on defendants' motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on the ground that the complaint fails to state a claim upon which relief can be granted. In the alternative, defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that no violation of plaintiff's constitutionally protected rights has been shown.[3] For the reasons stated below, defendants' motion for summary judgment is granted.

The following is a summary of the pertinent facts underlying this action. Unless otherwise indicated, the facts are taken from plaintiff's complaint. On August 21, 1981,[4] Corrections Officer (C.O.) Cook entered plaintiff's cell and ordered plaintiff to make his bed. An argument ensued and plaintiff told C.O. Cook to leave him alone, using foul language. A few minutes later, plaintiff received a "ticket"[5] for abusive language and harassment.

On Tuesday, August 25, plaintiff went before the Adjustment Committee and pleaded not guilty to the abusive language charge on the ground that, since C.O. Cook's report did not accurately quote plaintiff's statement, the charge was unwarranted. The Adjustment Committee found that the charge was warranted and punished plaintiff by dismissing him from his prison job and taking away two commissary "buys" and two phone calls. Plaintiff requested an investigation of the incident and a transfer to the prison's Special Housing Unit (S.H.U.). Both requests were denied by the prison officials. (*See* Exhibits A and B to Complaint).

On August 30, plaintiff received another misbehavior report from C.O. Trainor for refusing to work and was placed in the S.H.U. On September 3, plaintiff went before the Adjustment Committee and received "seven days restriction and time served in the S.H.U." (Complaint at p. 3). Plaintiff was released from S.H.U. on September 3 and got off restriction on September 9.

Plaintiff received another ticket on September 6 for being "out of place". Plaintiff admitted his guilt and did not contest the validity of the ticket.

On September 9, plaintiff was told to report to "Utility # 4" (a work area) to perform his work assignment. Plaintiff refused to go to Utility # 4 on the ground that he was not assigned there and was not on the payroll sheet. The next day, Sergeant Wilhelm wrote up a misbehavior report. Plaintiff went before the Adjustment

---

3. Defendants also assert that if the court should find a violation of constitutional dimension, not all of the defendants were personally involved, and that the case should therefore be dismissed as to the non-participating defendants. Defendants further submit that they are shielded from liability based on the good faith immunity principle in that they lawfully exercised the discretion committed to them under State law.

   As to plaintiff's requests for restoration of good time credits and expungement of disciplinary records, defendants maintain that the case is moot since plaintiff is no longer an inmate.

   Finally, defendants maintain that plaintiff's attempt to recover $150,000 from the State treasury is barred by the Eleventh Amendment.

   In view of the court's finding that plaintiff's claims do not rise to the level of constitutional violations, it is unnecessary for the court to reach these additional grounds.

4. All of the events that plaintiff has addressed in his complaint took place in 1981.

5. A "ticket" is a misbehavior report issued by a prison official. Depending upon the severity of the misconduct, a ticket may result in an Adjustment Committee hearing or a Superintendent's Proceeding.

   An Adjustment Committee hearing is usually conducted by a Lieutenant Officer, who may authorize the imposition of punishment. An Adjustment Committee hearing is for minor misconduct and the consequences of a finding of such misconduct are generally loss of privileges or restriction in the Special Housing Unit (a disciplinary cell separated from the general population area) for short periods of time.

   A Superintendent's Proceeding is conducted by a Superintendent or Deputy Superintendent, who may authorize the imposition of sanctions for major misconduct. This proceeding is more formal and requires a written statement of facts and reasons for the disciplinary action taken. The consequences of a finding of major misconduct are generally the loss of good time credits or long periods of restriction in the Special Housing Unit.

Committee, where Lieutenant Edwards authorized placing plaintiff in the S.H.U.

On September 11, plaintiff received a ticket from C.O. Haynal for the same incident that was the basis of the earlier ticket from Sergeant Wilhelm. This ticket was later invalidated as duplicative. Also on this day, plaintiff went before the Adjustment Committee for the disposition of the September 6 ticket. Lieutenant Thompson authorized a total of 21 days restriction and loss of all privileges through September 30. (*See* Exhibits E and F to Complaint). During the hearing, Lieutenant Thompson warned plaintiff that if another ticket was issued he would see to it that plaintiff would be transferred to another prison with as much loss of good time credits as possible.

On September 16, 1981, Sergeant Puiglulee filed a misbehavior report charging plaintiff with forgery and abuse of correspondence privileges for forging the name of another inmate on a letter to an individual who was not on plaintiff's authorized correspondence list.

A Superintendent's proceeding was scheduled for September 22 to consider the charges against plaintiff. On September 17, plaintiff was given a copy of the Superintendent's Proceeding Formal Charges by Sergeant Wilhelm, who also offered his assistance to plaintiff. (*See* Exhibit I for formal charges.) Plaintiff was also charged with attempting to create a disturbance due to the allegedly inflammatory nature of the correspondence and with violating Department of Correctional Service (D.O.C.S.) Directive No. 4422, dated 3/26/79.[6]

Plaintiff requested that a fellow inmate, David Casey, be his witness on the forgery charge. Inmate Casey indicated at the hearing that he had given plaintiff permission to write to his sister and to put his name on the return address.

The Superintendent's Proceeding was held on September 22 before Deputy Superintendent of Security J. Perrin. Plaintiff, who was permitted to speak on his own behalf, pleaded not guilty to the charges except the charge of abuse of correspondence privileges. Plaintiff was found guilty on all four charges and received 90 days loss of good time credits.

Plaintiff was transferred to the S.H.U. of Downstate Correctional Facility on September 24. Subsequently, plaintiff was transferred to the S.H.U. of Elmira Correctional Facility and was released from the S.H.U. a week earlier than the date set by Superintendent Perrin.

In his complaint, plaintiff seeks the following relief: 1) a hearing before the court; 2) restoration of all good time credits; 3) expungement of all disciplinary reports regarding this action; and 4) damages in the amount of $150,000 for harassment, slander and violation of his First, Fourth and Eighth Amendment rights.

*Discussion*

■ In determining a motion for summary judgment, the court must be mindful that pro se pleadings should be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); *Cunningham v. Ward*, 546 F.2d 481, 482 (2d Cir.1976). Furthermore, on a motion for summary judgment, the court has a duty to draw all reasonable inferences in favor of the non-moving party. *Sterling National Bank and Trust Co. of New York v. Fidelity Mortgage Investors*, 510 F.2d 870, 875 (2d Cir.1975). To

---

6. D.O.C.S. directive No. 4422 is appended to the Affidavit of Joyce Andren in Support of Defendant's Motion for Summary Judgment (Andren Affidavit) as Exhibit G. It states in pertinent part:

B(2) Except for privileged correspondence, all persons to whom mail is sent by an inmate must have received prior approval for the exchange of correspondence according to the procedures contained in this directive.

(3) An up-to-date list containing the names and addresses of persons approved for correspondence shall be maintained by each facility correspondence unit. The list will be referenced in checking an inmate's outgoing mail. All unauthorized correspondence will be returned to the sender.

state a claim which will entitle him to relief under section 1983, a plaintiff must point to a specific constitutional guarantee safeguarding the interests he asserts have been invaded. *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160–61, 47 L.Ed.2d 405 (1976).

With these considerations in mind, the court turns to the complaint and plaintiff's allegations of constitutional violations. Plaintiff asserts, without making references to specific defendants or to specific events, that defendants have violated his First, Fourth and Eighth Amendment rights. Plaintiff's complaint may also liberally be construed to assert a challenge to the prison disciplinary procedures and hearings on due process grounds. Therefore, the court will consider possible violations of plaintiff's Fourteenth Amendment rights as well as possible violations of his First, Fourth and Eighth Amendment rights.

A. *Fourteenth Amendment Claim:*

█ Prisoners retain rights to due process under the Fourteenth Amendment, but these rights are subject to restrictions "imposed by the nature of the regime to which they have been lawfully committed." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). Federal courts are, however, reluctant to interfere in matters of prison administration and confinement. The court's role is to balance legitimate institutional goals against safeguarded constitutional protections. *Id.* It is not the law "that *any* change in the condition of confinement having a substantial adverse impact on the prisoner is sufficient to invoke the protections of the Due Process Clause." *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976) (emphasis in original).

In the instant action, plaintiff was subjected to discipline for a number of violations of prison rules. Plaintiff has asserted, and defendants have admitted, that plaintiff received five misbehavior reports (or tickets) over a period of one month. Excluding the fifth and last misbehavior report, plaintiff's punishment was limited to a loss of all privileges and detention in the S.H.U.

The protections afforded by the Due Process Clause are implicated only when government action deprives a person of life, liberty or property. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979). The court must first, therefore, look to the nature of the interest claimed by plaintiff to ascertain whether it is one protected by the Fourteenth Amendment. *Id.*

█ The Adjustment Committee's disposition of plaintiff's misbehavior report on September 11 resulted in a loss of privileges for 19 days. The Supreme Court has not explicitly addressed the issue of whether minimum due process requirements are implicated when a prisoner is deprived of privileges. In *Wolff v. McDonnell*, however, the Court indicated that it "[did] not suggest ... that the [minimum due process] procedures required ... for the deprivation of good time credits would also be required for the imposition of lesser penalties such as the loss of privileges." 418 U.S. at 571 n. 19, 94 S.Ct. at 2982 n. 19.

Furthermore, it appears that plaintiff was furnished with adequate notice of the charges and the reasons for the disciplinary action taken. For these reasons, the court finds that the procedure which resulted in plaintiff's loss of privileges did not violate plaintiff's right to due process.

█ As to the detention in the S.H.U., which plaintiff alleges occurred on August 30, 1981 and September 16, 1981, the court finds that the defendants comported with due process requirements as set forth in *McCann v. Coughlin*, 698 F.2d 112, 121 (2d Cir.1983). The detention of a prisoner in S.H.U. requires 24 hours advance notice of charges prior to the disciplinary hearing, a statement of the reasons for the disciplinary action taken and a written statement of the evidence relied on. *McCann*, 698 F.2d at 121. *See also Crooks v. Warne*, 516 F.2d 837 (2d Cir.1975); *Powell v. Ward,*

487 F.Supp. 917 (S.D.N.Y.1980), *aff'd as modified,* 643 F.2d 924 (2d Cir.) (per curiam), *cert. denied,* 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981).

■ On both occasions, plaintiff received advance notice, reasons for the disciplinary action taken and a written statement of the evidence relied on. (See Exhibits B1, B2, F1, H, I to Andren Affidavit). The court therefore concludes that there were no violations of plaintiff's due process rights with respect to the misbehavior reports, excluding the fifth and last misbehavior report.

■ In the fifth misbehavior report, plaintiff was cited for the serious misconduct of forgery and abuse of correspondence privileges.[7] This misbehavior report was the basis of the Superintendent's Proceeding at which plaintiff received a punishment of 60 days in detention and 90 days' loss of good time credits. As noted above, plaintiff seeks restoration of his good time credits and the expungement from his prison records of all disciplinary reports relevant to all of his claims, as well as damages.

In *Preiser v. Rodriguez,* 411 U.S. 475, 494, 93 S.Ct. 1827, 1838, 36 L.Ed.2d 439 (1973), however, the Supreme Court held that a state prisoner seeking the restoration of good time credits must bring an action for a writ of habeas corpus under 28 U.S.C. § 2254. "Congress has determined," said the Court, "that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact

or length of their confinement, and that specific determination must override the general terms of § 1983." *Id.* at 490, 93 S.Ct. at 1836. Were plaintiff in the instant case seeking only the restoration of his good time credits, it is clear that this court could not examine the validity of the prison disciplinary procedure with regard to the fifth misbehavior report in this action under § 1983.[8]

The complaint may also, however, be read to assert a claim for damages arising from the disciplinary hearing in connection with the fifth misbehavior report. "[A] damage action by a state prisoner [may] be brought under the Civil Rights Act in federal court without any requirement of prior exhaustion of state remedies." *Id.* at 494, 93 S.Ct. at 1838. This court may therefore consider plaintiff's due process claim with respect to the Superintendent's Proceeding.[9] *See Wolff v. McDonnell,* 418 U.S. 539, 554, 94 S.Ct. 2963, 2973–74, 41 L.Ed.2d 935 (1974).

■ In *Wolff v. McDonnell,* the Court held that a liberty interest protected by the Fourteenth Amendment was created where a state "[had] not only provided a statutory right to good time [credits] but also specifie[d] that [they were] to be forfeited only for serious misbehavior." *Id.* at 557, 94 S.Ct. at 2975.[10]

Assuming for the purpose of this opinion that plaintiff had a state-created liberty interest in his good-time credits, the court now turns to the issue of whether the

---

7. Plaintiff attempted to send a letter to inmate David Casey's sister. Apparently, plaintiff did not have authorization to correspond with her. Instead of using his name on the return address, he used Casey's name.

8. Furthermore, this equitable aspect of plaintiff's request for relief appears to be moot, since plaintiff was released from prison on June 30, 1982. The court need not reach the issue of mootness, however, because attacks on "the fact or length of ... confinement" are not cognizable under section 1983. *Preiser,* 411 U.S. at 494, 93 S.Ct. at 1838.

9. In view of the court's determination that the damages claim is properly brought under sec-

tion 1983, it is unnecessary to determine whether an action for the expungement of prison records may be brought under section 1983.

10. "[The] state having created the right to good-time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated". *Wolff,* 418 U.S. at 557, 94 S.Ct. at 2975.

Superintendent's Proceeding challenged by plaintiff comported with the requirements of due process. The minimum requirements of due process when good time credits are in jeopardy are, according to the Supreme Court, "advance written notice of the claimed violation and a written statement of the fact findings as to the evidence relied upon and the reasons for the disciplinary action taken." *Wolff v. McDonnell,* 418 U.S. at 563, 94 S.Ct. at 2978. The Court was "also of the opinion that the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so [would] not be hazardous to institutional safety or correctional goals." *Id.* at 566, 94 S.Ct. at 2979.

In the case at bar, plaintiff received a ticket for forgery and abuse of correspondence privileges on September 16, 1981. The court finds that the ticket sufficiently "inform[ed] [plaintiff] of the charges [to] enable him to marshal the facts and prepare a defense." *Id.* at 564, 94 S.Ct. at 2978. In addition, the court finds that the ticket constitutes sufficient advance written notice, since the Superintendent's Proceeding convened six days later, on September 22. *Cf., id.*

Moreover, plaintiff's request to call a witness to testify in his defense on the forgery charge was granted by the prison officials. Plaintiff was also given a copy of the "Superintendent's Proceeding Report" after the conclusion of the proceeding, which stated the reasons for the disciplinary action taken and identified the evidence relied upon. (*See* Exhibit J to Complaint.) For these reasons, it is unquestionable that the prison procedure satisfied at least the minimum requirements of due process.

▆▆▆ Plaintiff contends that he had a due process right to choose his own assistance in preparing for the Superintendent's Proceeding. The Supreme Court has held that "inmates do not have a right to retained or appointed counsel in disciplinary hearings." *Baxter v. Palmigiano,* 425 U.S. 308, 315, 96 S.Ct. 1551, 1556, 47 L.Ed.2d 810 (1976), *quoting Wolff v. McDonnell,* 418 U.S. at 570, 94 S.Ct. at 2981. Nor is there a right to be represented by lay counsel, such as a jail house lawyer. *Thomas v. Estelle,* 603 F.2d 488, 489 (5th Cir.1979); *U.S. v. Wilhelm,* 570 F.2d 461 (3d Cir.1978). For these reasons, plaintiff's contention that he had a right to his choice of counsel must fail.

Even construing plaintiff's complaint most liberally, the court finds, for the reasons stated above, that there is no genuine issue of material fact and that, as a matter of law, plaintiff has failed to state a valid claim under the Fourteenth Amendment. The court will therefore grant summary judgment for defendants on the Fourteenth Amendment claim.

### B. *First Amendment Claim:*

Plaintiff contends that the prison officials at Mid-Orange Correctional Facility violated his First Amendment rights. The court will consider this assertion in relation to plaintiff's attempt to correspond with inmate Casey's sister and with respect to plaintiff's August 21, 1981 confrontation with C.O. Cook.

D.O.C.S. directive # 4422 [11] requires that, in order for an inmate to correspond with an individual outside the prison, a correspondence request must be filed and approved. Plaintiff attempted to send a letter to inmate David Casey's sister, an individual with whom plaintiff had no permission to correspond. Plaintiff was subjected to disciplinary action for abuse of the correspondence privilege. Plaintiff's complaint may liberally be construed to claim that defendants, by restricting his right to use the mails, have violated his First Amendment rights.

▆▆▆ It is established law that a prisoner's First Amendment rights are subject to limitations based upon the legitimate goals and policies of the particular correc-

---

**11.** *See* n. 6, *supra,* and accompanying text.

tional system. *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). Mailing letters to family or friends may be subject to restriction with proper justification. *Id.* at 827, 94 S.Ct. at 2806. The court finds that the correspondence restrictions imposed by the Mid-Orange Correctional Facility were reasonable limitations. *See Williams v. Ward,* 404 F.Supp. 170 (S.D.N.Y.1975); and *Sostre v. McGinnis,* 442 F.2d 178 (2d Cir.1971), *cert. denied sub nom. Sostre v. Oswald,* 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 *cert. denied sub nom. Oswald v. Sostre,* 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972).

■■■ Plaintiff also argues that he was "unjustly" punished for abusive language and harassment for his verbal attack on C.O. Cook. It is a settled rule of law that a prisoner's right to free speech is subject to limitations. For example, in *Hawkins v. Elliott,* 385 F.Supp. 354 (D.S.C. 1974), the court held that a prisoner has "no right to verbally abuse guards nor to engage in other forms of protest which impose a clear danger of disorder and violence." *Id.* at 354. In the instant case, plaintiff claims that C.O. Cook quoted him incorrectly in the report, although plaintiff admits to the use of offensive language. Whether C.O. Cook quoted plaintiff correctly or not, plaintiff had no right to address a corrections officer in this admittedly abusive manner. (*See* quote in complaint at 2.) Summary judgment for defendants is therefore appropriate with respect to plaintiff's First Amendment claim.

### C. *Fourth Amendment Claim:*

■■ It is plaintiff's contention that defendants invaded his privacy by opening the letter addressed to inmate Casey's sister and that they thereby infringed upon his Fourth Amendment rights. Although prisoners are entitled to certain safeguarded rights under the Constitution, these rights do not include freedom from the inspection or perusal of mail. *Wolff v. McDonnell,* 418 U.S. 539, 576, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974). Because plaintiff's Fourth Amendment rights were not violated when the letter to inmate Casey's sister was opened by the prison officials, summary judgment for defendants is appropriate with respect to plaintiff's Fourth Amendment claim.

### D. *Eighth Amendment Claim:*

■■ Plaintiff's complaint may be read to contend that prison authorities violated his Eighth Amendment rights in that his punishment was cruel and unusual or that the fines imposed were excessive. In *Sostre v. McGinnis,* the Second Circuit defined cruel and unusual punishment as that which is "barbarous or shocking to the conscience." 442 F.2d 178, 191 (2d Cir. 1971), *cert. denied sub nom. Sostre v. Oswald,* 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740, *cert. denied sub nom. Oswald v. Sostre,* 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972). In *Wolfish v. Levi,* 573 F.2d 118, 125 (2d Cir.1978), *rev'd on other grounds sub nom. Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Second Circuit further defined cruel and unusual punishment as the failure to provide prisoners with adequate food, clothing, shelter, sanitation, medical care and personal safety. Plaintiff's complaint fails to show that the prison officials deprived plaintiff of the necessities of life.

Plaintiff further argues that the punishments imposed were excessive to the point that they constituted a violation of the Eighth Amendment. Courts are extremely reluctant to find unconstitutionally disproportionate punishment imposed by prison officials. *Wright v. McMann,* 460 F.2d 126 (2d Cir.), *cert. denied,* 409 U.S. 885, 93 S.Ct. 115, 34 L.Ed.2d 141 (1972).

In the instant case, the prison officials did not overstep the broad area of discretion granted to them in imposing punishment. The sanctions imposed by the prison officials would seem reasonable in light of the particular offenses committed. Summary judgment for defendants is therefore appropriate with respect to plaintiff's Eighth Amendment claim.

### E. *Harassment and Slander Claim:*

█ Plaintiff argues that, under section 1983, he is entitled to damages for harassment and slander. Even if plaintiff were able to sufficiently establish proof of these charges, however, this court would be unable to consider this issue.

The averment that a tort was committed under color of state law is not enough. To be cognizable in a section 1983 action, the wrongdoing must amount to a deprivation of a right, privilege or immunity secured by the Constitution or the laws of the United States. *Gittlemacker v. Prasse,* 428 F.2d 1 (3rd Cir.1970).

For example, in *Collins v. Cundy,* 603 F.2d 825 (10th Cir.1979), the plaintiff alleged that a sheriff laughed at him and threatened to hang him. The court held that verbal harassment does not constitute a constitutional claim. *Id.* at 827.

Section 1983 requires that the alleged conduct violate a constitutionally safeguarded right. Neither harassment nor slander rises to the level of a constitutional claim. Therefore, plaintiff's tort action, if any, must lie in state court.

█ Moreover, it is a settled rule of law that one cannot recover damages under section 1983 and state tort law if both claims are based on the same facts. *Clappier v. Flynn,* 605 F.2d 519, 531 (10th Cir.1979). It is apparent that plaintiff's section 1983 claim and his state tort law claim are based on the same facts. Plaintiff would not be able to recover twice. For the reasons stated above, the slander and harassment allegations are not actionable under section 1983.

### Conclusion

The court has liberally construed the allegations in favor of the pro se plaintiff and finds that defendants are entitled to summary judgment as a matter of law. Accordingly, defendants' motion is granted and judgment will be entered for defendants.