**Ronald SIMMAT**

v.

**John R. MANSON, et al.**

**Civ. No. H–82–201.**

United States District Court,
D. Connecticut.

March 25, 1982.

---

Dominic J. Squatrito, Richard W. Dyer, Manchester, Conn., for plaintiff.

Cornelius Tuohy, Asst. Atty. Gen., Hartford, Conn., for defendants.

## RULING ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

BLUMENFELD, Senior District Judge.

In this action Ronald Simmat, a state prisoner presently incarcerated in the Connecticut Correctional Institution in Somers, Connecticut (C. C. I. Somers), seeks a preliminary and permanent injunction to restrain the defendants, John R. Manson, Commissioner of the Department of Corrections for the State of Connecticut, and Carl Robinson, Warden at C. C. I. Somers, from transferring him to the Federal Correctional Institution in Oxford, Wisconsin (F. C. I. Oxford). Presently before the court is the plaintiff's motion for a preliminary injunction.[1]

Since April 1982 the plaintiff has functioned as a columnist and reporter for the *Journal Inquirer*, a daily newspaper in Manchester, Connecticut, and has published a series of articles describing life at C. C. I. Somers and on occasion criticizing the administration of the prison and the Department of Corrections. On February 17, 1982, the plaintiff was notified by prison officials that a hearing would be held the following day to determine if he should be transferred to F. C. I. Oxford because of threats to his personal safety at C. C. I. Somers. After the hearing, at which Mr. Simmat was represented by Ramon Martinez, a correctional counselor employed by the Department of Corrections, the decision was made to transfer Mr. Simmat. Mr. Simmat has consistently opposed this transfer which he contends is motivated not by a concern for his personal safety but by a desire to silence his public criticism of prison officials through the forum of his column in the *Journal Inquirer*.

On February 18, 1982, the plaintiff filed this action under 42 U.S.C. § 1983 alleging that the defendants are violating his due process and first amendment rights. Juris-

---

1. The plaintiff has not agreed to consolidate the hearing on the preliminary injunction with the final trial on the merits pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure and, therefore, the court will only consider the propriety of the plaintiff's motion for a preliminary injunction at this time.

diction is pleaded under 28 U.S.C. § 1343. The complaint alleges violations of due process because the plaintiff was given inadequate notice and insufficient time to prepare for the transfer hearing, and was not afforded effective representation by counsel of his own choosing. In addition, the complaint alleges that the decision to transfer him was motivated solely by the defendants' desire to silence his criticism and thereby deprive him of his freedom of expression guaranteed by the first and fourteenth amendments to the United States Constitution. On February 23, 1982, this court entered a temporary restraining order enjoining the defendants from transferring the plaintiff from C. C. I. Somers to any other correctional institution pending a hearing and decision on his motion for a preliminary injunction. An evidentiary hearing was held on March 1, 1982, and the parties have had an opportunity to submit post-hearing memoranda.

In this circuit the standard for granting preliminary injunctive relief requires

a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Sperry International Trade, Inc. v. Government of Israel,* 670 F.2d 8, 11 (2d Cir. 1982), (quoting from *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir. 1979) (per curiam)). The plaintiff in this case contends that he has made a sufficient showing of (1) irreparable injury; (2) sufficiently serious questions going to the merits to make them a fair ground for litigation, and (3) a balance of hardships tipping in his favor.

I. *The Constitutional Interest Involved*

■ At the outset it is necessary to distinguish between the interest the plaintiff as an inmate has in not being removed from the institution where he is presently incarcerated and the interest he has in the protection of his first amendment rights. As to the first, his interest in remaining at Somers is not constitutionally cognizable to the degree necessary to require the prison authorities to comply with procedural due process.[2] *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976); *Meachum v. Fano,* 427 U.S. 215, 228, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451 (1976); *Cofone v. Manson,* 594 F.2d 934, 938–39 (2d Cir. 1979). The plaintiff, however, is identifying his claim as one based upon the denial of first amendment rights which, of course, is distinct from the due process interest.

■ The existence of first amendment rights for prisoners has been recognized by the United States Supreme Court which has held that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). The plaintiff's first amendment right to freedom of expression encompasses the right to express himself without puni-

---

2. Although the plaintiff's complaint raises both due process and first amendment issues, the plaintiff initially decided not to press his due process claim in light of Supreme Court holdings to the effect that

no Due Process Clause liberty interest of a duly convicted prison inmate is infringed when he is transferred from one prison to another ... whether with or without a hearing, absent some right or justifiable expectation rooted in state law that he will not be transferred except for misbehavior or upon the occurrence of other specified events.

*Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). *Accord, Meachum v. Fano,* 427 U.S. 215, 228, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451 (1976). Since it has been settled that Connecticut law creates no such expectation, *Cofone v. Manson,* 594 F.2d 934, 938–39 (2d Cir. 1979), the plaintiff wisely declined to relitigate this issue. Although he has recently requested an opportunity to reconsider whether the due process claim should be fully briefed and argued in view of the Supreme Court's grant of certiorari in *Hewitt v. Helms,* —— U.S. ——, 102 S.Ct. 1629, 71 L.Ed.2d 865 (1982), I need not delay my ruling on the motion for a preliminary injunction for this reason in light of my determination that he has made a sufficient showing to justify the issuance of a temporary injunction on first amendment grounds alone.

tive retaliation.[3] The first amendment prevents the intimidation of first amendment expression as well as its direct prohibition. *See, e.g., Buckley v. Valeo*, 424 U.S. 1, 64–65, 96 S.Ct. 612, 656–657, 46 L.Ed.2d 659 (1976) (per curiam) (the first amendment requires exacting scrutiny of a law compelling disclosure of political contributors because of its deterrent effect on the exercise of first amendment associational rights); *Elrod v. Burns*, 427 U.S. 347, 359, 96 S.Ct. 2673, 2682, 49 L.Ed.2d 547 (1976) (plurality opinion) (threat of dismissal from public employment for political reasons inhibits first amendment rights); *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972).

The situation presented here, then, is one where the action taken by the prison authorities does not deprive the plaintiff of his first amendment rights except as he claims that the transfer is being done in retaliation for his exercise of them. While his right to remain at Somers as an inmate is not of sufficient substance to merit due process protection against deprivation, nevertheless, the loss of it may amount to something more than a mere subjective chill on his exercise of his first amendment rights. This interest has received consideration and recognition by the courts. *See, e.g., McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979); *Buise v. Hudkins*, 584 F.2d 223, 229 (7th Cir. 1978), *cert. denied*, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979); *Fajeriak v. McGinnis*, 493 F.2d 468, 470 (9th Cir. 1974).

Having thus analyzed the nature of the interest involved, I turn to consider whether a preliminary injunction should issue.

## II. *Irreparable Injury*

Generally a showing of irreparable injury sufficient to merit a preliminary injunction requires at a minimum a demonstration by the plaintiff that "if [he] is entitled to a final injunction, [his] interim damages cannot be calculated with sufficient accuracy to make damages an adequate substitute." *Ives Laboratories, Inc. v. Darby Drug Co., Inc.*, 601 F.2d 631, 644 (2d Cir. 1979).

The defendants argue that the plaintiff's transfer will not affect his right to express himself since he will have the same first amendment rights in Wisconsin as he has at Somers. Defendants' Memorandum at 5. This argument does not address the main point of the plaintiff's first amendment claim. Mr. Simmat alleges that he has a first amendment interest in not being transferred solely because of the prison authorities' desire to silence or punish his criticism. This allegation presents not only a constitutionally cognizable first amendment claim but one as to which the Supreme Court has specifically held that "[the] loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. at 373, 96 S.Ct. at 2690.

The nature of the alleged injury, therefore, qualifies for injunctive relief. I turn next to an appraisal of the merits.

## III. *Serious Questions Going to the Merits*

The plaintiff's first amendment claim raises serious issues that should be resolved only after a full hearing on the merits. The parties had little time to prepare for the hearing on the motion for a preliminary injunction and, therefore, the court does not at this time have the advantage of a full record. The nature of the issues necessitate a full factual record to enable the court to make the delicate accommodation between the plaintiff's constitutional rights and the legitimate needs of the prison administration. *See Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974).

---

**3.** In addition, an action which silences the public speech of inmates implicates the first amendment rights of the public as well as the individual prisoner who is silenced. *Cf. Procunier v. Martinez*, 416 U.S. 396, 408–09, 94 S.Ct. 1800, 1808–09, 40 L.Ed.2d 224 (1974) (mail censorship of prisoners' mail restricts first amendment rights of the prisoners' correspondents outside prison).

The defendants have justified their decision to transfer Mr. Simmat by citing their need to protect his personal safety. Warden Robinson and Commissioner Manson testified that Mr. Simmat has developed a notorious reputation at Somers at least partially as a result of his articles. They state that he has revealed to the press information given in confidence by other inmates, that he has named specific prisoners as being involved in serious criminal activity and has in general called attention to himself and antagonized other inmates. Mr. Simmat contends that his safety is not in danger at this time and that no other inmate has been involuntarily transferred solely because of concern for his personal safety. He asserts that the actual motivation for his transfer is to silence him and that, if given the time to prepare for a full hearing, he can present direct evidence concerning the real reason for his transfer and the actual impact of his journalistic activities on the atmosphere within the prison.

Whether the plaintiff can meet his burden of proof under *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977), as to whether the impermissible motive of silencing or punishing his constitutionally protected speech was a substantial factor in the transfer decision remains to be determined. If he makes this showing the burden will shift to the defendants to prove by a preponderance of the evidence that the same decision would have been made even in the absence of the protected conduct. *Id.* This inquiry presents special problems in the prison context where the court must give "wide-ranging deference" to the expertise of prison officials concerning the "adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security ... [at least] 'in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations.'" *Bell v. Wolfish*, 441 U.S. 520, 547–48, 99 S.Ct. 1861, 1878–79, 60 L.Ed.2d 447 (1979) (quoting from *Pell v. Procunier*, 417 U.S. at 827, 94 S.Ct. at 2806).

The question of motivation is never a simple issue to resolve. The court will be aided in the delicate task of determining the actual reasons for the plaintiff's transfer if a fuller record can be developed at the final hearing on the merits of the plaintiff's claim.

In addition, the court is likely to be faced with the difficult task of balancing the first amendment interests of the plaintiff against the legitimate governmental interests of the prison authorities. *Haymes v. Montanye*, 547 F.2d 188, 192 (2d Cir. 1976), *cert. denied*, 431 U.S. 966, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1977). Within the prison context the *Mt. Healthy* "affirmative defense" that the authorities would have made the "same decision anyway," *Burns v. Rovaldi*, 477 F.Supp. 270, 279 (D.Conn.1979), implicitly involves the court in balancing the plaintiff's first amendment rights against the prison authorities' "legitimate penological objectives," *Pell v. Procunier*, 417 U.S. at 822, 94 S.Ct. at 2804. If the decision to transfer Mr. Simmat does in fact infringe upon his first amendment rights because it constitutes an attempt to punish or silence him, and if it nevertheless serves legitimate penological interests, the court must find a "mutual accommodation" between the prisoner's and the administration's interests. *See Wolff v. McDonnell*, 418 U.S. at 556, 94 S.Ct. at 2974. This balancing task presents a significant legal issue which needs to be resolved on the basis of a full factual record.

### IV. *Balance of Hardships*

The final showing which the plaintiff must make to justify the issuance of preliminary injunctive relief is "a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Caulfield v. Board of Education of the City of New York*, 583 F.2d 605, 610 (2d Cir. 1978). The balance of hardships does appear to weigh in the plaintiff's favor. Since first amendment interests are implicated the prison authorities must make a convincing demonstration that an immediate transfer is the only way in which they can protect

Mr. Simmat from imminent danger. *See Elrod v. Burns*, 427 U.S. at 373–74, 96 S.Ct. at 2689–90.

Mr. Simmat seeks merely a continuation of the status quo pending an adjudication of his constitutional claims. Since December 1981 he has been confined in administrative segregation. The prison authorities have in the past housed prisoners in segregation for years in order to ensure their personal safety. It is difficult to conclude that an order preventing the plaintiff's immediate transfer would result in great hardship to the defendants since it would only require that they continue to keep him in segregation.

The defendants have not shown either that (1) Mr. Simmat is in imminent peril or (2) that, if he is, a transfer is the only way in which they can protect him. On the question of whether Mr. Simmat is at present in immediate danger, prison officials testified that he has been threatened by other prisoners because some of his articles revealed information given in confidence by other inmates, named specific individuals as being informers or murder suspects, and insulted specific elements of the prison population. There was evidence of one specific threat by an individual with whom Mr. Simmat has, according to his own testimony, resolved his difficulties. There were reports that conversations had been overheard in which prisoners housed in segregation expressed anger at Mr. Simmat. The prison officials conceded, however, that they have no evidence of direct threats having been made toward the plaintiff. Testimony of Dr. Fitzgerald. Mr. Simmat testified that threats are common in all prisons and that he does not feel personally threatened at this time. He stated that he has been assaulted in the past but has never been attacked since he began writing for the *Journal Inquirer*. In fact, his vigorous opposition to this transfer indicates that he does not take seriously any alleged threat to his personal safety. Whatever his desire for freedom of expression, the court takes notice of the fact that he has a substantial interest in ensuring his own personal safety.

In addition, the prison officials have not adequately demonstrated that, even if a great danger to Mr. Simmat's safety exists, they do not have adequate means at hand to protect him for the short period of time required to reach a final resolution of the constitutional issues presented by this case. Warden Robinson testified that threats have been overheard by prisoners housed in segregation as well as in the general prison population. The defendants conclude that the plaintiff is not safe either in segregation or in the general population and that, therefore, he must be transferred. They have not shown, however, that there are no other alternatives that would suffice for the short run. Although it may be true that a long-term solution to the problem may require a transfer, the prison authorities must demonstrate more to justify a transfer prior to a full adjudication of Mr. Simmat's claims.

In the absence of any evidence demonstrating that an immediate transfer is the only way to protect Mr. Simmat, the court finds that the balance of hardships does weigh in favor of the plaintiff's first amendment interests. A temporary injunction should issue, therefore, in view of the fact that the plaintiff has shown both irreparable injury and the existence of serious questions going to the merits.

For the reasons stated above I hereby order that the defendants are temporarily enjoined from transferring the plaintiff from his present place of incarceration pending a final hearing on the merits of his claim to be held before this court as soon as expedited preparation will permit. A pretrial conference shall be held on April 5, 1982 at 9:00 a. m. in order to schedule preparation for the hearing.

SO ORDERED.