Nazzaro SCARPA, Plaintiff,

v.

Joseph PONTE, Francis Millette, Steven Goldrick, and Richard England, Defendants.

Civ. A. No. 83–0185–W.

United States District Court, D. Massachusetts.

July 2, 1986.

Nelson G. Apjohn, Nutter, McClennen & Fish, Boston, Mass., for plaintiff.

Mary Ann Horcher, Dept. of Correction, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

WOLF, District Judge.

Plaintiff Nazzaro Scarpa, a prisoner at Massachusetts Correctional Institute at Walpole ("M.C.I., Walpole"), has brought this action against Joseph Ponte, Superintendent of M.C.I., Walpole, and Francis Millette, Steven Goldrick, and Richard England, the three members of a prison disciplinary board that sentenced Scarpa to ten days in isolation for writing an allegedly disrespectful and threatening letter to defendant Ponte. Scarpa claims that defendants violated his free speech rights under the First Amendment and his due process rights under Fourteenth Amendment of the United States Constitution. His cause of action arises under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

Scarpa has filed a motion for summary judgment on three of the four counts in his complaint. He also seeks a ruling that defendants are not entitled to qualified immunity. Defendants have filed a cross-motion for summary judgment on all of the counts in the complaint. The parties have filed memoranda, affidavits, and various exhibits in support of their motions. The court heard oral arguments on February 27, 1986.

For the reasons stated below, the court grants summary judgment for Scarpa on his due process claim. The court denies summary judgment on the First Amendment claim because it involves disputed issues of material fact. Finally, summary judgment is granted for Scarpa on the qualified immunity issue because the First and Fourteenth Amendment rights allegedly violated were clearly established and should have been recognized by the defendants at the time his cause of action accrued. Defendants' motion for summary judgment is denied.

As discussed in detail below, the court recognizes that prison officials have considerable discretion in disciplining prisoners. This does not, however, include the discretion to punish a prisoner for statements he has made without a legitimate penological objective. The broad discretion granted to prison officials in this sensitive area carries with it a responsibility to state clearly the reasons why punishment of expression has been determined to be appropriate. This requirement was not met in this case.

## I. FACTS

Unless otherwise specified, the following facts are not disputed. On or about October 26, 1982, defendant Ponte received a letter from Nazarro Scarpa, an inmate at M.C.I., Walpole. In this letter, Scarpa threatened to "haul [Ponte's] behind into court" if he did not dismiss a disciplinary report that was pending against Scarpa. The tone and the language of the letter was arguably mocking, taunting, and disrespectful.[1]

Ponte responded to this letter by filing another disciplinary report ("D.R. No. 82–3223") against Scarpa. *See* Exhibit B to

---

1. The full text of Scarpa's letter reads as follows:
   Dear Little Ponte—or is it Ma Ma's Boy. Whatever it is, i sent you an appeal Form *Telling* you to dismiss D. Report No # 82–2580 and 2–2579. Well you denied my appeal "of course" and made me do 15 days isolation on d. Report no # 82–2580. Well if you make me do 15 more days isolation on 82–2579 you will be imposing double Jeperdy. now i suggest you sit down and send me my appeal on D. Report 82–2579 and i strongly suggest you dismis it or i'll haul your behind into court. Thats fun i like that. Bye Bye Little Ponte.

   P.S.    i heard through the grape vine that you were one tough Marine HAHAAAAA what a joke.
   HAA Hee Hee.
   chow 4 now
   signed
   Nazzaro Scarpa
   10 Block
   oh y keep the good food comin in expeshaly the breakfast in bed. One more thing ... we've had turkey a couple times too many. How abut baked stuffed lobster for Christmas and don't forget a hot cup of espresso insted of coffe.  enough with the turkey "ya no"

Plaintiff's Memorandum in Support of His Motion for Partial Summary Judgment (hereinafter "Plaintiff's Initial Memorandum"). He alleged that Scarpa had committed two disciplinary offenses under 103 Code of Mass. Regs. § 430.22:

> (a) Disobeying an order of, lying to, or insolence toward a staff member. 103 C.M.R. § 430.22(1).
>
> (b) Fighting with, assaulting or threatening another person with any offense against his person or property. 103 C.M.R. § 430.22(18).

Ponte's disciplinary report also stated that he found "the remarks contained in this correspondence to be disrespectful and threatening."

On October 28, 1982, the prison gave Scarpa a copy of the disciplinary report and a Notice of Disciplinary Hearing.

On November 5, 1982, a prison disciplinary board, composed of defendants Millette, Goldrick, and England, held a hearing on Ponte's charges against Scarpa. Scarpa and Ponte both attended the hearing. It is undisputed that the disciplinary board had a copy of the letter at the hearing, and that Scarpa asked the disciplinary board to give him a copy of the letter on which Ponte's charges were based. Scarpa alleges that the board never gave him a copy of the letter. Affidavit of Nazzaro Scarpa (March 13, 1986) (hereinafter "Scarpa Aff.") ¶ 2 (attached to Plaintiff's Second Supplemental Memorandum in Support of his Motion for Partial Summary Judgment and in Opposition to Defendants' Cross-Motion for Summary Judgment). Defendant Millette, who was chairman of the disciplinary board in 1982, concedes that Scarpa asked for a copy of his letter at the disciplinary hearing. Millette asserts that he told Scarpa he would supply him with a copy. Millette further claims that if Scarpa asked to refer to Millette's copy of the letter during the hearing, he surely would have let him see it, as it was Millette's usual practice to grant such requests. Affidavit of Francis J. Millette, Jr. (March 11, 1986) (hereinafter "Millette Aff.") ¶ 2 (attached to Defendants' Supplemental Memorandum in Sup-

port of Their Motion for Summary Judgment).

The disciplinary board found Scarpa guilty of the offenses charged and imposed a sanction of ten days in isolation, which Scarpa served. The disciplinary board issued a one-page written decision the same day. Exhibit C to Plaintiff's Initial Memorandum. Scarpa appealed the disciplinary board's decision to Brian G. Gendron, the Associate Commissioner of Operations for the Massachusetts Department of Corrections. On November 22, 1982, Gendron denied Scarpa's appeal.

On March 29, 1983, Scarpa filed his complaint in this action, alleging that the defendants who sat on the disciplinary board violated his due process rights under the Fourteenth Amendment (Count I) and his free speech rights under the First Amendment (Count II). Scarpa also alleges that defendant Ponte violated his due process rights (Count III) and First Amendment rights (Count IV). He seeks both punitive and compensatory damages. Scarpa has moved for summary judgment on his due process and First Amendment claims against the members of the disciplinary board and on his First Amendment claims against Ponte. He also argues that, as a matter of law, defendants are not entitled to qualified immunity. Defendants seek summary judgment of all four counts of the complaint.

## II. SUMMARY JUDGMENT STANDARD

As a threshold matter, the court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56(c), the court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In addition, "the court must look at the record in the light most favorable to the party opposing the motion and must in-

dulge all inferences favorable to that party." *Stepanischen v. Merchants Despatch Transportation Corp.*, 722 F.2d 922, 928 (1st Cir. 1983) (citing *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976)). For the purposes of this action, it is also necessary to note that the court must be "particularly cautious" about granting summary judgment in cases involving the state of mind of one of the parties. *Stepanischen*, 722 F.2d at 928.

## III. CONCLUSIONS OF LAW

The cross-motions for summary judgment raise three issues. First, Scarpa claims that the members of the disciplinary board violated his due process rights under the Fourteenth Amendment by failing to give him a copy of the letter he wrote to Ponte and by failing to give adequate reasons for finding him guilty and sentencing him to ten days in isolation. Second, Scarpa asserts that Ponte and the members of the disciplinary board violated his First Amendment rights by punishing him for the content of his letter. Third, Scarpa claims that defendants are not entitled to qualified immunity because his rights under the First and Fourteenth Amendments were clearly established at the time he was wrongly punished.[2]

### A. *Due Process Claims*

It is well-settled that " '[l]awful incarceration brings about the necessary withdraw-

al or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' " *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974) (quoting *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948)). This is not to say that a prisoner loses all of his constitutional protections while incarcerated. For instance, the Supreme Court has held that prisoners may not be deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974).

Scarpa claims that the members of the disciplinary board violated his due process rights under the Fourteenth Amendment by refusing to give him a copy of his letter during the disciplinary hearing and by giving insufficient reasons for disciplining him. Defendants respond that their actions satisfied the requirements of due process.

To prove a claim for violation of due process, the plaintiff must first demonstrate a protected liberty or property interest and then show that he was deprived of that interest without due process of law. *Board of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). In this action, the parties do not dispute that Scarpa possesses a state-created liberty interest against isolated confinement.[3] At issue here, is whether the

---

**2.** Scarpa's claims arise under 42 U.S.C. § 1983, which reads as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Defendants do not dispute that they acted under color of state law. Rather, they claim that they did not deprive Scarpa of any "rights, privileges, or immunities secured by the Constitution and laws" of the United States.

**3.** Here, Scarpa's liberty interest is not created by the United States Constitution. *See Hewitt v.*

*Helms*, 459 U.S. 460, 466–68, 103 S.Ct. 864, 868–70, 74 L.Ed.2d 675 (1983) (Due Process Clause does not create a liberty interest in being confined to a general population cell, rather than "more austere and restrictive administrative segregation quarters"); *Wolff*, 418 U.S. at 556–57, 94 S.Ct. at 2975 ("the interest of prisoners in disciplinary procedures is not included in that 'liberty' protected by the Fourteenth Amendment). But as in *Hewitt* and *Wolff*, Scarpa's liberty interest against isolated confinement is created by the Massachusetts regulations governing disciplinary procedures. *Hewitt*, 459 U.S. at 471–72, 103 S.Ct. at 871–72; *Wolff*, 418 U.S. at 557, 94 S.Ct. at 2975. *See also King v. Higgins*, 702 F.2d 18, 20–22 (1st Cir.), *cert. denied sub nom. Vinzant v. King*, 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 344 (1983) (inmate in Massachusetts prison had clearly established lib-

defendants deprived Scarpa of his protected liberty interest without due process of law.

In *Wolff v. McDonnell,* the Court held that in cases involving disciplinary proceedings, due process required prison officials to give the accused inmate at least 24 hours notice of the charges to allow him to prepare for the hearing. 418 U.S. at 564, 94 S.Ct. at 2978–79. In addition, "the inmate facing disciplinary proceedings should be allowed to present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566, 94 S.Ct. at 2979. Finally, if the prisoner is found guilty, the decision must be accompanied by a " 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Id.* at 564, 94 S.Ct. at 2979 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972)).

These procedures are necessary to ensure fair and accurate decisions, "protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding," and facilitate administrative or judicial review. *Wolff,* 418 U.S. at 565, 94 S.Ct. at 2979.

Scarpa's first due process contention is that he asked for a copy of the letter on which Ponte's charges were based, but the disciplinary board refused or neglected to give him a copy. He argues that the failure to give him a copy of the letter violated his due process rights, established in *Wolff,* because it prevented him from presenting essential documentary evidence on his behalf.

If Scarpa's allegations are true, the disciplinary board would have violated his due process rights by failing to give him a copy of his letter. The charges against Scarpa were based solely on the contents of the letter. Having a copy of the letter would have been essential to the preparation and presentation of Scarpa's defense. In addition, giving a copy of the letter to Scarpa would have posed no threat to institutional security or correctional goals.

Defendants, in their initial memorandum, claim that Scarpa knew the contents of the letter and therefore had no need to have a copy at the disciplinary hearing. This assertion is not persuasive. While Scarpa may have been familiar with the contents of the letter, at a minimum he needed to see its exact language in order to defend his interpretation of the meaning of the letter and rebut the charges against him. Thus, based on the facts presented prior to oral argument, the court would likely have granted summary judgment for Scarpa on this aspect of his due process claim.[4]

However, Francis Millette, the chairman of the disciplinary board that punished Scarpa, has since filed an affidavit challenging Scarpa's claim that he never received a copy of the letter. Millette Aff. ¶ 2. Specifically, Millette states:

> Mr. Scarpa asked for a copy of the letter which he had sent to Superintendent Ponte, and I told him I would supply him with a copy. I do not remember if Mr. Scarpa asked to refer to my copy of the letter during the hearing, but if he did I am sure I would have let him refer to it, as is my usual practice.

erty interest against being put in isolated confinement without a due process hearing).

**4.** The clear absence of a threat to prison security distinguishes this case from the Supreme Court's recent decision in *Ponte v. Real,* 471 U.S. 491, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985). In *Real,* the Court held that prison officials did not have to provide a contemporaneous statement of reasons for denying the presentation of witnesses at a disciplinary hearing. Instead, the prison officials could give a post-hearing explanation or even wait until trial to give their reasons. *Id.* at 2196. This holding was based on the conceivable penological interests that would be served by a delayed explanation. *Id.* at 2196–97. Here, defendants have offered no institutional justification for denying Scarpa's request to see his own letter. Instead, they either claim that he had no need for the letter, or that Millette would have given Scarpa the letter if Scarpa did in fact ask for it. Neither of these reasons triggers the application of the *Real* holding to the instant case. Thus, if the disciplinary board failed to comply with Scarpa's request to see his letter to Ponte, Scarpa should prevail on his due process claim.

*Id.* Thus, Millette concedes that Scarpa asked for the letter. His affidavit purports to put into dispute whether he actually gave Scarpa a copy of the letter, although he does not affirmatively state that he did. Scarpa has responded with an affidavit of his own, restating that he was never given a copy of the letter. Scarpa Aff. ¶ 2.

The court has serious reservations as to whether Millette's affidavit meets the requirements for raising a genuine issue of disputed fact. Specifically, to raise a disputed issue of fact, the party opposing a summary judgment motion must present evidence based on personal knowledge that would be admissible at trial. Fed. R. Civ. P. 56(c). The language of Millette's affidavit is ambiguous. Millette does not remember whether Scarpa asked to refer to Millette's copy of the letter during the hearing. But if Scarpa did ask to refer to Millette's copy of the letter, Millette claims to be sure he would have complied because it was his usual practice to do so. Thus, Millette's testimony may not meet the personal knowledge requirements of Fed. R. Civ. P. 56 or of Rule 602 of the Federal Rules of Evidence which provides that "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter". In addition, it is questionable whether Millette's statement would be admissible pursuant to Rule 406 of the Federal Rules of Evidence pertaining to habit or routine practice. Whether Scarpa asked to see Millette's copy of the letter appears to be a preliminary fact that would have to be established under Federal Rule of Evidence 104(a) before Millette could invoke the habit or routine practice rule. Yet, Millette does not remember whether Scarpa actually asked to refer to Millette's copy of the letter.

■ Despite these reservations, the court does not believe that summary judgment should be granted on this issue at this time. As stated previously, on a motion for summary judgment, the court generally may not weigh the credibility of the evidence. Instead, the court must view the record in the light most favorable to the nonmovants and indulge all inferences in their favor. *Hahn,* 523 F.2d at 464. If Millette's affidavit is read in the light most favorable to him, there appears to be a disputed issue as to whether Scarpa actually received the letter that he wrote to Ponte. In addition, other witnesses at trial might testify as to whether Scarpa asked to see Millette's copy of the letter, thus possibly allowing admission of Millette's alleged practice to prove the letter was disclosed to Scarpa at the hearing. Thus, the court will reserve this question for future consideration. Further discovery may clarify this issue; if not, at trial it would be possible to hold a *voir dire* of defendant Millette to address the admissibility of the statements in his affidavit and to make evidentiary rulings in the context of the relevant testimony of all witnesses.

In addition, it is not necessary to decide this issue at this time given the court's ruling, *infra,* that defendants violated Scarpa's due process rights by failing to explain adequately their decision to discipline him. Thus, Scarpa's motion for summary judgment against the members of the disciplinary board for failing to give him a copy of his letter is denied at this time, without prejudice to renewal at or before trial. The defendants' cross-motion for summary judgment on this issue is also denied.

Scarpa's second due process argument is that the disciplinary board failed to give adequate reasons for finding him guilty of disciplinary offenses and then imposing a sanction of ten days in isolation.

■ The disciplinary decision was issued on a one-page form. Defendant Millette apparently filled in the form on the day of the hearing since it was signed by him and dated November 5, 1982. Millette summarized the "credible evidence presented to the disciplinary board" as follows: "Plea/Not Guilty;" "Request charge 18 be dropped;" "Request copy of letter;" "Reporting staff members present and evidence." Under the space labeled "Finding," Millette wrote, "Guilty." Under the

space for "Sanction and Recommendations," he wrote, "10 days iso." And, under the space for "Reasons for Sanctions and Recommendation," Millette wrote, "After reviewing report/evidence board views clear guilt sanction is warranted this type of actions will not be tolerated and sanction reflects this (sic)."

The court concludes that this decision falls short of the due process requirements described in *Wolff* and its progeny. The decision contains only a conclusory statement that Scarpa was guilty of the offenses charged, and that his actions would not be tolerated. It does not specify which parts of the letter were intolerable or, for that matter, whether the mere writing of the letter, regardless of its content, constituted a disciplinary offense. Given the important First Amendment issues raised by charging Scarpa with a disciplinary offense for writing a letter to Ponte containing arguably disrespectful, yet legitimate requests and warnings, it was incumbent upon the disciplinary board to delineate with precision its reasons for finding Scarpa guilty of two separate disciplinary offenses and sanctioning him by requiring that he serve ten days in isolation.

As the Seventh Circuit Court of Appeals has said:

> Without a detailed statement of the [disciplinary] Committee's findings and conclusions, a reviewing court (or agency) cannot determine whether the finding of guilt was based on substantial evidence or whether it was sufficiently arbitrary so as to be a denial of the inmate's due process rights.

*Chavis v. Rowe*, 643 F.2d 1281, 1287 (7th Cir.), *cert. denied sub nom. Chavis v. Boles*, 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981). *See also Dyson v. Kocik*, 689 F.2d 466, 467 (3d Cir. 1982) (subsequent history omitted) (misconduct conviction not supported by meaningful written statement of evidence relied on and

reasons for actions taken where decision failed to make findings as to specific acts of misconduct); *Hayes v. Walker*, 555 F.2d 625, 633 (7th Cir.), *cert. denied*, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977) (disciplinary sanctions not accompanied by adequate statement of evidence relied on and reasons for actions taken where disciplinary committee merely incorporated the violation report and special investigator's report); *Gomes v. Travisano*, 510 F.2d 537, 540 (1st Cir. 1974) (the "major thrust" of *Wolff* requirements is to prevent arbitrary decisions); *cf. United States ex rel. Johnson v. Chairman of New York State Board of Parole*, 500 F.2d 925, 934 (2d Cir.), *vacated as moot sub nom. Regan v. Johnson*, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974) ("To satisfy minimum due process requirements [in a parole release case] a statement of reasons should be sufficient to enable a reviewing body to determine whether parole has been denied for an impermissible reason or for no reason at all ... [T]he decision [must] be based upon consideration of all relevant factors and ... [furnish] ... grounds for the decision ... and essential facts upon which the [Parole] Board's inferences are based....").

Here, the disciplinary board's decision fails to give notice of reasons on which it is based, protect Scarpa against "collateral consequences based on a misunderstanding of the nature of the original proceeding," or facilitate judicial review. *Wolff*, 418 U.S. at 565, 94 S.Ct. at 2979. At a minimum, the disciplinary board should have identified the portions of the letter that constituted the disciplinary offense, stated why such language could not be tolerated, and explained why isolation was an appropriate sanction for Scarpa's behavior.

Thus, the court concludes that the board's decision violated Scarpa's due process rights.[5] Scarpa's motion for summary

---

5. The court notes that the disciplinary board's decision also violates Massachusetts regulations requiring a *description* of the evidence relied upon in reaching a guilty finding and a statement of the reasons for the sanctions imposed.

103 C.M.R. § 430.17. These regulations appear to codify the written statement requirements announced in *Wolff*. However, the fact that the decision violates state regulations is not pertinent to the due process inquiry in an action 42

judgment on due process grounds (Count I) is, therefore, allowed. Defendants' cross-motion on Counts I and III is denied.[6]

## B. *First Amendment Claims*

Scarpa also seeks summary judgment on his First Amendment claims against Ponte and the members of the disciplinary board. Specifically, he claims that he was punished solely on the basis of the contents of his letter in violation of his free speech rights. Defendants respond that Scarpa's First Amendment rights, which are more limited because he is a prisoner, were not violated here because defendants held a good faith and reasonable belief that disciplinary action was in the interest of prison security.

As stated previously, a prisoner's constitutional rights are necessarily subject to restrictions upon incarceration. *Pell v. Procunier,* 417 U.S. at 822, 94 S.Ct. at 2804. The guiding principle regarding prisoners' First Amendment rights was stated in *Pell v. Procunier:*

> In the First Amendment context ... a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.

417 U.S. at 822, 94 S.Ct. at 2804. Legitimate penological objectives include deterrence of crime, rehabilitation, and preservation of internal security. *Id.* at 822–23, 94 S.Ct. at 2804.

In striking the balance between an inmate's First Amendment rights and valid policies and goals of prison administration, the court must accord prison administrators:

> wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.... "Such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."

*Bell v. Wolfish,* 441 U.S. 520, 547–48, 99 S.Ct. 1861, 1878–79, 60 L.Ed.2d 447 (1979) (citations omitted). This "hands-off" policy, *Procunier v. Martinez,* 416 U.S. 396, 404, 94 S.Ct. 1800, 1807, 41 L.Ed.2d 224 (1974), is necessary first because internal security is "central to all other corrections goals," *Pell,* 417 U.S. at 823, 94 S.Ct. at 2805, and second because "courts are ill equipped to deal with ... urgent problems of prison administration and reform," *Procunier,* 416 U.S. at 405, 94 S.Ct. at 1807. *See also Hewitt v. Helms,* 459 U.S. 460, 474, 103 S.Ct. 864, 872–73, 74 L.Ed.2d 675 (1983) (" 'a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators,' " quoting *Rhodes v. Chapman,* 452 U.S. 337, 349

---

U.S.C. § 1983. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

**6.** Defendants' cross-motion seeks summary judgment on all counts of Scarpa's complaint, including Counts I and III. Scarpa seeks summary judgment on Counts I, II, and IV. Count I alleges that the members of the disciplinary board violated Scarpa's due process rights. Count III alleges that Ponte violated Scarpa's due process rights. Scarpa does not seek summary judgment on Count III. The court denies defendants' motion for summary judgment on Count III, as well as Count I, because, as superintendent of M.C.I., Walpole and a principal actor in this case, Ponte should have known that the disciplinary board's decision violated Scarpa's due process rights. *King,* 702 F.2d at 21

(official designated to hear appeals from disciplinary board decisions was liable for due process violations below because he knew or should have known of these improprieties). *See also Rizzo v. Goode,* 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976); *Voutour v. Vitale,* 761 F.2d 812, 820 (1st Cir. 1985) (supervisor is liable for acts of subordinates if he was personally involved, or an affirmative link is established between conduct of the supervisor and the employee). As superintendent, Ponte is the official ultimately responsible for the administration of disciplinary proceedings. More importantly, Ponte was personally involved in this case. He received Scarpa's letter, filed a disciplinary report, and attended Scarpa's disciplinary hearing.

n.14, 101 S.Ct. 2392, 2400 n. 14, 69 L.Ed.2d 59 (1981)); [7] *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125, 97 S.Ct. 2532, 2537–38, 53 L.Ed.2d 629 (1977).

The First Circuit has interpreted this policy of deference to limit a court's review of prison administrators' decisions to:

> whether the prison officials were acting in a *good faith and reasonable belief* that the restrictions they were imposing were necessary. The concept of reasonableness, however, must be applied so as to give, in the words of the *Wolfish* Court, "wide-ranging deference" to prison administrators on questions of prison security and discipline. *Id.* A court should not give "reasonable" such a constricted meaning that it includes only the measures the court would take were it running the prison itself. Even if the prison officials' evaluation of an incident is significantly different from the court's, their view is entitled to prevail so long as honestly held and within rational boundaries.

*Gomes v. Fair*, 738 F.2d 517, 525 (1st Cir. 1984).

Here, Ponte issued a disciplinary report against Scarpa because he deemed Scarpa's letter to be disrespectful and threatening. As stated previously, he charged Scarpa with "disobeying an order, lying to, or insolence toward a staff member," and "fighting with, assaulting or threatening another person with any offense against his person or property."

Scarpa claims that the only threat in the letter was "to haul Ponte's behind into court" if Ponte did not dismiss another disciplinary report against Scarpa. Scarpa further asserts that he had a right both to ask for the dismissal of the report under Department of Correction regulations, 103 C.M.R. §§ 430.19, 430.25, and to bring an action against Ponte if Scarpa felt that Ponte had failed to review his appeal fairly. *Procunier v. Martinez*, 416 U.S. at 419, 94 S.Ct. at 1814 (prisoners have due process right of access to the courts). Thus, Scarpa argues that if Ponte filed a disciplinary report against Scarpa for threatening to sue him, Ponte infringed upon his First Amendment rights for an impermissible purpose.

Scarpa further argues that Ponte could not punish him for writing a disrespectful or abusive letter because such actions would be impermissible content-based regulation of speech. He cites several Supreme Court decisions to support this argument. *See Cohen v. California*, 403 U.S. 15, 24–25, 91 S.Ct. 1780, 1787–88, 29 L.Ed.2d 284 (1971); *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S.Ct. 1575, 1577–78, 29 L.Ed.2d 1 (1971); *Baumgartner v. United States*, 322 U.S. 665, 673–74, 64 S.Ct. 1240, 1244–45, 88 L.Ed. 1525 (1944).

The court agrees with Scarpa's contention that Ponte could not punish Scarpa merely for threatening to sue the superintendent. Nor could Ponte punish Scarpa merely because Scarpa was, as Ponte's affidavit indicated, a "prolific letter writer." Affidavit of Joseph Ponte ¶ 6 (March 11, 1986) (hereinafter "Ponte Aff."). The mere act of letter writing, without more, does not threaten or hinder a legitimate penological objective.

---

**7.** In *Hewitt,* the Court went on to say:

> In assessing the seriousness of a threat to institutional security, prison administrators necessarily draw on more than the specific facts surrounding a particular incident; instead, they must consider the character of the inmates confined in the institution, recent and longstanding relations between prisoners and guards, prisoners *inter se,* and the like. In the volatile atmosphere of a prison, an inmate easily may constitute an unacceptable threat to the safety of other prisoners and guards even if he himself has committed no misconduct; rumor, reputation, and even more imponderable factors may suffice to spark potentially disastrous incidents. The judgment of prison officials in this context, like that of those making parole decisions, turns largely on "purely subjective evaluations and on predictions of future behavior," *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 464 [101 S.Ct. 2460, 2464, 69 L.Ed.2d 158] (1981); indeed, the administrators must predict not just one inmate's future actions, as in parole, but those of an entire institution. 459 U.S. at 474, 103 S.Ct. at 872–73.

However, Scarpa's contention that Ponte could not punish him for writing a disrespectful letter is incorrect. As several courts have held, a prisoner has no right to address prison officials in a disrespectful or abusive manner, or to engage in other forms of protest which impose a clear and present danger of disorder and violence. *Savage v. Snow,* 575 F.Supp. 828, 836 (S.D. N.Y.1983); *Hawkins v. Elliot,* 385 F. Supp. 354, 358 n.15 (D. S.C. 1974); *Collins v. Schoonfield,* 363 F. Supp. 1152, 1158 (D. Md. 1973).

In addition, most of the cases relied upon by Scarpa on this point did not involve prisoners, and the prisoner cases that Scarpa does cite do not support his position. For example, he cites *Procunier v. Martinez,* a case setting forth the standards for censoring prisoners' mail, to support his argument that prison officials cannot punish prisoners for writing letters containing disrespectful or abusive comments. In *Procunier,* the Court stated that the defendant Department of Corrections had failed to show that *censorship* of prisoner correspondence to outsiders containing disrespectful comments served any legitimate government purpose. The Court did not, however, decide that a prisoner's letter written directly to the superintendent of the prison, containing disrespectful or abusive language could never provide the grounds for disciplinary action. None of the other cases cited by Scarpa announce a *per se* rule prohibiting punishment of prisoners for writing abusive or disrespectful letters to prison officials.[8]

The First Circuit's decision in *Gomes* further compels the rejection of Scarpa's claim that prison officials may not discipline inmates for writing abusive letters to prison employees. In *Gomes,* the plaintiff inmate handed a sexually explicit poem to a female social worker who worked at the prison. The Court of Appeals held that "the district court erred in finding that prison officials could not reasonably have believed that Gomes' conduct warranted his reclassification and the holding of a hearing on [the social worker's] disciplinary charge." 738 F.2d at 528. The *Gomes* court distinguished between the writing of sexually explicit poetry and the handing of such poetry to a female prison employee to whom the inmate had already made previous advances. The court suggested that it would be impermissible for prison officials to punish the *writing* of sexually explicit poetry, without more. However, it would be permissible to punish the *improper use* of sexually explicit poetry. Scarpa focuses on this difference between the writing itself and the use of the writing in an effort to distinguish *Gomes.* Specifically, he contends that the *Gomes* holding does not apply here because defendants punished him for the contents of his letter, not for improper, nonspeech conduct. This contention is insufficient to warrant summary judgment, however, because defendants claim that they punished Scarpa for sending a disrespectful letter to Ponte, not for merely writing it.

█ Thus, the issue here, as in *Gomes,* is whether defendants had a good faith and reasonable belief that Scarpa's letter was

---

8. Scarpa cites *Carothers v. Follette,* 314 F.Supp. 1014 (S.D.N.Y.1970) as direct support for his contention. In *Carothers,* the court held that a prisoner could not be punished for sending a letter to his parents containing critical comments about prison officials since it could "hardly be contended that [the prisoner's] comments *intended for his parents* could threaten prison security, much less present a clear and present danger to the discipline of the prison." *Id.* at 1025. *Carothers* is clearly distinguishable from cases like this one where a prisoner writes a letter directly to the prison superintendent containing allegedly disrespectful and mocking language. Scarpa also attempts to limit the holding in *Savage v. Snow* (prisoners have no right to address prison officials in an abusive or disrespectful manner) to oral comments made in the presence of a prison official. This contention is unsupported by any authority and unpersuasive. The fact is that whether face-to-face or in writing, allowing clearly disrespectful and abusive language to go unpunished could conceivably threaten prison discipline and security by undermining the authority of prison officials and the obedience of prisoners to their orders.

abusive and threatened prison discipline and order, thus meriting disciplinary action. If so, they will ultimately prevail on the First Amendment issue. *Id.* at 525. Moreover, the defendants may have had more than one motive for punishing Scarpa. Even if defendants had an impermissible reason for disciplining Scarpa, they would still not be liable if they also had independent, permissible reasons for doing so. *Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

■ The legal standards governing Scarpa's First Amendment claims demonstrate that the court may not grant summary judgment on this question. The parties have raised issues of disputed material fact as to the motives for disciplining Scarpa. Similarly, whether the asserted belief that disciplining Scarpa was necessary to preserve prison security and/or order was held in good faith and reasonable is an inherently factual inquiry that cannot properly be decided on a motion for summary judgment. In addition, as discussed with regard to Scarpa's due process claims, the disciplinary board's written decision does not give adequate reasons for finding Scarpa guilty of committing disciplinary offenses and sanctioning him. Therefore, a trial on the merits will be necessary to determine whether the disciplinary board's decision was motivated by a good faith and reasonable belief that Scarpa had to be punished to protect a legitimate institutional objective, such as prison discipline and order, or by a desire to punish him for an impermissible purpose. Moreover, even if the board was motivated in part by an impermissible purpose, it may be that it had legitimate additional reasons for punishing Scarpa.

Because Scarpa's First Amendment claims involve disputed issues of material fact, the cross-motions for summary judgment on this question must be denied. *Simmat v. Manson,* 535 F.Supp. 1115, 1119 (D.Conn.1982) (summary judgment denied

where motive for disciplining constitutionally protected speech was disputed).

## C. *Qualified Immunity Claims*

■ Scarpa moves for summary judgment barring defendants from asserting a qualified immunity defense to the claims against them individually. Defendants argue in opposition that they acted in good faith and are thus immune from suit in their personal capacity. Because Scarpa's due process and First Amendment rights were clearly established and should have been recognized at the time Scarpa was disciplined, defendants are not entitled to qualified immunity for any violations of those rights proven in this case.

The Supreme Court has held that qualified immunity cannot be based on a public official's subjective good faith. Rather, qualified immunity turns on "the objective reasonableness of an official's conduct...." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In *Harlow,* the Court held:

[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Id.*

Defendants' only argument for qualified immunity is that they acted in subjective good faith. This assertion is inadequate in light of the objective standard articulated in *Harlow.* As defendants seem to recognize, Scarpa's due process and First Amendment rights were clearly established at least by 1974, eight years before the incidents giving rise to Scarpa's cause of action occurred. *See Wolff,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Pell,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). *See also King v. Higgins,* 702 F.2d 18, 22 (1st Cir.), *cert. denied sub nom. Vinzant v. King,* 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 344 (1983) (qualified immu-

nity defense rejected because prisoner's due process rights in disciplinary proceedings were clearly established even before *Wolff*).[9] *See also Chavis v. Rowe*, 643 F.2d 1281, 1288 (7th Cir.), *cert. denied sub nom. Chavis v. Bules*, 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981) (prisoner's due process rights in disciplinary proceedings were clearly established by *Wolff*).

For these reasons, defendants are not entitled to qualified immunity in this case. Scarpa's motion for summary judgment on the qualified immunity issue is therefore allowed.

### ORDER

For the reasons stated above, Scarpa's motion for summary judgment is ALLOWED in part and DENIED in part. Defendants' cross-motion for summary judgment is DENIED.

Specifically, summary judgment is hereby ALLOWED for Scarpa on his due process claims related to the adequacy of the reasons in the disciplinary board's November 11, 1982 decision; it is hereby DENIED with regard to his due process claims relating to the alleged failure to furnish him a copy of the letter at issue. The cross-motions for summary judgment on Scarpa's First Amendment claim are hereby DENIED. Scarpa's motion for summary judgment barring defendants' qualified immunity defense is hereby ALLOWED.

As directed at oral argument, the parties shall complete discovery on the issues remaining in dispute within 60 days of the date of this order.

---

9. Contrary to plaintiff's assertions, the court may not consider the fact that the disciplinary board's decision does not comport with state law in determining whether defendants are entitled to qualified immunity. *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 3019–20, 82 L.Ed.2d 139 (1984). The *Davis* holding appears to overrule part of the reasoning in *King v. Higgins*, 702 F.2d 18, 20 (1st Cir.), *cert. denied sub nom. Vinzant v. King*, 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 344 (1983). In *King*, the First Circuit Court of Appeals took into account the defendant's violation of clearly established prison regulations in denying his qualified immunity defense. The *Davis* decision, issued after *King* was decided, expressly disapproves this approach. However, the *King* Court made an independent finding that the plaintiff prisoner's due process rights were clearly established in 1973 *before* the Supreme Court decided *Wolff*. Thus, *King* is still valid precedent for the principle that Scarpa's due process rights were clearly established at the time his cause of action arose.